UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NATHANIEL SMITH,

    Plaintiff,

v.                                          Case No. 19-cv-262-pp

MARK JENSEN, GWENDOLYN VICK,
JEFFERY MANLOVE, and CRYSTAL MARCHANT,

    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 7) AND SCREENING AMENDED COMPLAINT (DKT. NO. 7-1)**

The plaintiff, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. Later, the plaintiff filed a motion to amend his complaint. Dkt. No. 7. As required by Civil L.R. 15, the plaintiff attached a proposed amended complaint to his motion. Dkt. No. 7-1. The court will grant his motion and will deem the amended complaint the operative complaint.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint.[1] The PLRA allows prisoner plaintiffs to proceed with their lawsuits without prepaying the civil

---

[1] The plaintiff filed a notice of change of address on January 6, 2020, indicating that he is no longer incarcerated. Dkt. No. 10.

1

case filing fee if they meet certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). On February 21, 2019, then-Magistrate Judge David E. Jones (the judge assigned to the case at that time) ordered the plaintiff to pay an initial partial filing fee of $2.22. Dkt. No. 5. The court received the fee on March 4, 2019. The court will grant the plaintiff's motion to proceed without prepaying the filing fee and will require the plaintiff to pay the remainder of the filing fee over time as he is able.

## II. Screening the Plaintiff's Amended Complaint

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

2

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

    A.    The Plaintiff's Allegations

When the plaintiff filed his amended complaint, he was an inmate at Waupun Correctional Institution. Dkt. No. 7-1 at 2. He named four defendants—Mark Jensen, Gwendolyn Vick, Jeffrey Manlove and Crystal Marchant. Id. at 1. The plaintiff alleges that on March 30, 2018, he submitted a health services request complaining about chronic pain in his left foot, caused by a bullet sticking out of the side of the foot. Id. He asserts that, about a week later, health services staff gave him pain medication and referred him to defendant Dr. Manlove. Id. The plaintiff alleges that Dr. Manlove referred him for x-rays and to see a "foot specialist." Id. at 3.

About three weeks later, on April 24, 2018, the plaintiff submitted another health services request about the foot pain, noting that the naproxen wasn't working. Id. According to the plaintiff, Nurse Jensen replied that the plaintiff had been scheduled for an offsite appointment. Id. The plaintiff explains that on May 16, June 7, June 20 and July 25, 2018, he submitted health services requests because his foot still hurt and had started to tingle and go numb; he also asked about the foot specialist. Id. According to the plaintiff, Jensen and Nurse Vick continued to tell the plaintiff that he had been scheduled for an offsite appointment. Id.

The plaintiff asserts that he was transported offsite on September 26, 2018, to what he assumed was going to be an appointment with the foot specialist. Id. at 4. The plaintiff explains that all that happened was that he was fitted for shoes and returned to the institution. Id. The plaintiff says that on October 8, 2018, he submitted a health services request complaining that all had had happened offsite was that he'd been fitted for shoes, and that his foot still was hurting and going numb. Id. Jensen allegedly responded that "shoes will help symptoms . . . let's start with shoes." Id. The plaintiff explains that on October 10, 2018, he submitted another health services request, stating that he had a bullet sticking out of the side of his foot and asking what shoes were going to do to help the pain and numbness. Id. Jensen responded that that would be a good question to ask the "man" the plaintiff was to see when he went offsite. Id.

About two months later, on December 4, 2018, the plaintiff was taken offsite; again, he assumed he was going to get some kind of pain relief, but it turned out he was only picking up the shoes. Id. The plaintiff submitted another HSU request on December 10, 2018, complaining of tingling, pain and numbness and reiterating that there was a bullet sticking out of his foot. Id. Jensen responded that the plaintiff should discuss these issues with Dr. Manlove at his upcoming appointment. Id. On December 18, the plaintiff went to the HSU to pick up the shoes. Id. at 4-5.

The alleges that from January 16, 2019 through August 2, 2019, he consistently complained that his foot was constantly hurting and the naproxen wasn't working. Id. at 4-7. According to the plaintiff, in January 2019, Jensen told him that the plaintiff had been seen by Dr. Manlove on December 26, 2018, the plaintiff was referred to an orthosurgeon to see if the bullet could be removed. Id. at 5. On March 17, 2019, when the plaintiff complained that he hadn't been seen by neurology for the tingling and numbness, Vick responded that this hadn't been ordered. Id. On April 14, 2019, after other complaints had gone unaddressed, the plaintiff sent a request directly to the Health Services Manager, Marchant, complaining about the lack of pain relief. Id. Someone named Ann York replied that the plaintiff was on the doctor's waiting list. Id.

After further HSU complaints that did not result in visits to an orthosurgeon or a neurologist, the plaintiff was sent to Waupun Memorial Hospital on June 18, 2019 to see an orthosurgeon; however, only his shoulder was x-rayed, not his foot. Id. at 6.

5

That same day, the plaintiff states that he complained to Dr. Manlove and Marchant that nothing was done offsite to address the pain in his foot. Id. The plaintiff asserts that he received no response. Id. About a week later, the plaintiff received a memo stating that he was to be seen by podiatry. Id. at 7. A few weeks later, the plaintiff again complained that the naproxen wasn't working. Id. Vick allegedly responded that he had been scheduled to be seen. Id. The plaintiff explains that he saw Dr. Manlove on August 2, 2019 for shoulder pain and was "vehement about getting different pain meds" because naproxen wasn't working. Id. According to the plaintiff, Dr. Manlove prescribed salsalate and acetaminophen. Id. The plaintiff tells the court that since his first contact with the Health Services Unit back in March 2018, nothing had been done to adequately treat the issue with his foot. Id.

The plaintiff has requested compensatory and punitive damages and costs. Id. at 8.

B.  The Court's Analysis

"[D]eliberate indifference to prolonged, unnecessary pain can [] be the basis for an Eighth Amendment claim." Smith v. Knox Cty. Jail, 666 F.3d 1037, 1040 (7th Cir. 2012) (citations omitted). The Seventh Circuit has explained that, "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." Id. (citations omitted). The court will allow the plaintiff to proceed on a deliberate-indifference claim against Dr. Manlove, Jensen, Vick and Marchant based on his allegations that they failed to address his repeated complaints of foot pain and persisted in a

6

course of treatment that the plaintiff repeatedly told them was ineffective. See Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion to amend the complaint. Dkt. No. 7. The court **DIRECTS** the clerk's office to docket the plaintiff's amended complaint, dkt. no. 7-1, as a separate docket entry, which will be the operative complaint.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's amended complaint and this order to the Wisconsin Department of Justice for service on defendants Mark Jensen, Gwendolyn Vick, Jeffery Manlove and Crystal Marchant. The court **ORDERS** the defendants to file a responsive pleading to the amended complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff must pay the **$347.78** remainder of the filing fee over time as he is able. He may mail payments to the clerk's office at the below address. He should mark his payments with the case name and number.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 10th day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**